Good morning, your honors. Vince Bronco, Federal Defenders, on behalf of Mr. Ramos. United States v. Becker is based on an assumption that California would only apply its burglary statute to unlawful entries. Subsequently, that assumption has proven false, both in the California courts and an en banc decision of this court in Aguila Montes. Now it's clear that California burglaries apply to someone who is just home shoplifting, or is invited into the home and commits stock fraud, or a situation where they just go in the home to pass a false check. What do we do about Lopez Cardona, though? That seems to reaffirm Becker, and that's after that series of cases. Lopez Cardona didn't address the arguments that we are making here, and didn't address specifically, in any way, the changes in California law or the clarity. It didn't address it, but it came out after those cases reaffirmed Becker. And so how can we now decide, well, because the panel there didn't hear those particular arguments, we could reach a different conclusion? Aren't we bound by it? No, as I mentioned in my 28-J, you know, it's a long-standing assumption that issues that merely lurk in the record, that aren't considered or decided by the court, aren't binding on subsequent panels. That's true, but there was a specific finding, determination, Lopez Cardona, right? There was a finding that Aguila Montes was not, that Becker was not irreconcilable. And so that one wasn't lurking in the record. They came right out and told us that this is what we're holding here. Well, obviously the changes in California law were no part of Lopez Cardona, so that was obviously lurking in the record. But I believe that the arguments that I'm making here and that I made in the reply brief were also just lurking in the record in Lopez Cardona, because they were never presented to the Lopez Cardona panel. Meaning the panel was only presented with an argument that, well, because Aguila Montes says now California, or made clear that California burglary doesn't fit the guideline definition, it doesn't apply. And they just compared, okay, there are different definitions of crimes of violence, so they're not clearly reconcilable. But what they didn't consider is that subsequent panels such as yourself are also bound by the reasoning of an en banc decision. And it is the reasoning of Aguila Montes that's important, because Aguila Montes, unlike prior cases, found that California burglary applies to the person that's just invited to the home and decides to steal something or commit some type of fraud, the traditional shoplifting, home shoplifting situation. And because of that rationale, Lopez Cardona never considered the rationale and said, no, we're not, you know, we've considered the rationale about Aguila Montes and we're dismissing it. They only decided the precise issue that was brought before them as that was these definitions of crimes of violence are so similar that the holdings carry over into the 16B context. I'm not making that argument. I'm making the argument that the rationale is that Aguila Montes shows that California burglary applies to a whole class of people that Becker assumed it did not. And so you're not bound by Lopez Cardona? Well, we've had some disputes internally about, well, if one panel makes a ruling but didn't consider a much better argument, a cleverer attorney or whatever it is that comes along later, is the subsequent panel bound or not by the prior ruling? And although there's been some disputes, I can't think of a case where the court upheld a second determination that completely eviscerated the prior one just because there was a better argument. Are you aware of any case like that? I guess the closest case I can get is, I think it's Ortega, where in that case there was a prior ruling that California battery was a crime of, I believe it was a crime of violence. And the court, a subsequent panel looked at, well, did the original decision, I think it was Robinson that said it was a crime of violence. Let's try to find the rationale for it. And they couldn't find one, so they did some assumptions. And then they looked at, well, are these assumptions true under California law and our subsequent en banc decisions? So I guess that would be the closest situation of where there's a direct holding on point California battery, but a subsequent panel, a three-judge panel, just went and looked at, well, does this still fly in light of California law now and en banc decisions? I think the problem for your argument is Lopez-Cordona came after these changing California cases. That seems like a problem and makes it not exactly on point with the Ortega sequence. Well, again, but, you know, perhaps there's problems with the Aguilamontes on its own over rules, but still you have to consider, you know, which Lopez-Cordona never did. Go ahead. Has this been overruled by state law? Don't we have to also consider why a crime is defined as a crime of violence? Do you think that's only cases in which actual violence occurred? No. What I'm saying under 16B. If you answer no to that, then where do we draw the line if we follow your argument? Well, under 16B, crime of violence definition, this Court's case law is clear. You look at the full range of conduct under the statute, and if considering that full range of conduct, is that by its nature a crime of violence? And here you have a situation where under California law, the full range of conduct under California applies to someone, you know, a housekeeper stealing someone from the person that's employing them. You know, the best case in California, I think, is where someone's responding to classified ads and he's paying for them with false checks and the person doesn't find out until afterwards. These are situations that are clearly not violent. I see I have three minutes left unless there's questions. I'll reserve my time for rebuttal. Good morning, Your Honors. May it please the Court, Charlotte Kaiser on behalf of the United States. Touching on, as Judge Aikuda had said, Lopez Cardona was decided after, and Lopez Cardona is presidential authority. It did uphold Becker, and in addition, it cited to a multitude of other cases to uphold its finding that first-degree residential burglary would constitute a crime of violence, which decides exactly on the issue. Now, while Mr. Bronkow has pointed out that Lopez Cardona does not deal directly with the arguments that he's making about the unlawful entry, we direct the Court's attention to the Supreme Court case of Locale, which, while it did state this in dicta, this Court has relied on these statements before, which is burglary by its nature may involve force by the perpetrator in order to complete the crime. And that's an important distinction because certainly, as is recognized by the appellant's argument, there are California cases in which the perpetrator has entered who has entered in an open or in a licensed or privileged entry and then commits a crime. However, during that time, as the case law has recognized, the owner could discover that something is amiss, and that could lead to the substantial risk of physical force. Well, it could, but is that in the case of a privileged entry, one other than, usually you think of burglary as somebody breaking into to steal something, but the California statute extends to cover other crimes. And in that case, the threat of violence would seem to stem not from the entry, the burglary, but from the other crime that's committed. But that doesn't necessarily change how it should be interpreted according to the reading of the statute, Title 18, United States Code 16b. So this site, opposing counsel sites, and I don't know if I can find the case now, consensual entries with intent to commit stock fraud, people v. Salemi, was determined under California law to be covered by that statute, consensual entries with intent to con the resident. So that the statute, in fact, extends to consensual entries that perhaps don't present the risk that the Supreme Court identified. Now, if we were not, if Lopez Cardona had not been decided and we were considering this anew, wouldn't that undercut the theory that it was categorically a crime of violence? Well, no, I don't believe so. Again, I think that when the Supreme Court has considered the crime of violence definition, again, we revert back to that this risk of force could occur for the completion of the crime. And the concern is that we are starting to input the generic definition of burglary now into the crime of violence definition. And when we look just simply at the crime of violence definition and what it contemplates about the substantial risk of physical force, whether it's unlawful or not, burglary is a crime of violence because of the fact, as the Supreme Court has indicated, that it can, the crime as part of the completion can result in the physical force. Well, I mean, isn't that reading too much into that? A state could define burglary. I mean, that's why we have the Taylor approach in the first place. A state could define burglary as entering into a house for the purpose of playing poker. I mean, they can define burglary however they want. And our job is to see whether the state-defined crime of burglary has the elements of the generic federal offense or raises the risk of violence under the residual clause. But playing poker in somebody's house doesn't. So if the state so defined the burglary statute as including a subsection E, playing poker, then we couldn't say it was categorically a crime of violence, could we? Your Honor, I would say, I would defer to the court in that because that's not the case that we have here, obviously, because the case we have here is the California definition of burglary, which deals with the entry into, in this case, a building. And obviously, in Aguila Montes, the court had recognized that its potential it can deal with open to the public, as well as an unlicensed or unprivileged entry. But just simply that fact should not undercut the fact, undercut that it could, it will involve a substantial risk of fiscal entry. Those California cases don't deal with that issue because that's not the issue that is presented to them. Is the modified approach available to us here? Your Honor, I believe that this Court has, on certain occasions, applied the modified categorical approach to the crime of violence definition. I mean, could we use it here to ascertain the form of burglary, what the underlying offense being committed upon entry? And once we look at the modified categorical approach, and just for clarification, Your Honor, you're asking for us to apply the modified categorical approach according to the substantial risk test? Well, I'm really asking, do we have evidence in the record, the kind of document that we can rely upon for the modified categorical approach? Does it tell us enough about the specific offense of this defendant? Absolutely, Your Honor. During his change of plea colloquy, the defendant stipulated to the probation report. And the probation report contains a lengthy factual basis. It contains an interview from the owner of the property as well as the defendant's admissions in his post-arrest statement. The owner had indicated that when she had entered the apartment, she heard a noise and that she went to the back room and she saw the defendant running in the street opposite the direction of her apartment. The defendant admitted that he entered the apartment through a window with the intent to steal some jewelry, and that when he heard the owner, he then left and threw that same window and escaped. Now, of course, that's the... Is that information in a document that we're allowed to rely upon? Yes, it is, Your Honor, because according to Al-Mazarin, this court has a case in which this court recognized the fact that if a defendant stipulated to the police reports as part of the record, then the police reports could be incorporated into the modified categorical approach. And this is exactly the same type of case with the exception of the fact that it's the defendant stipulated to the probation report. Can I ask you about the acceptance of responsibility issue? We have some cases, particularly I'm thinking of Cortez, where we said if the court relies on a person, the defendant, going to trial, that's probably not acceptable. That is not a basis for saying that the defendant didn't accept responsibility. And it seemed to me that was the only issue the district court relied on in making its determination here. Why wasn't that an error? Your Honor, reading the record, we would respectfully disagree with that. But, Your Honor, with regard to that, two points. First of all, the appellant had noted in the reply brief that the defendant had already served his sentence, and so that issue, while not legally moot, is practically moot. So certainly I think appellant can address during his rebuttal as to whether or not he plans to abandon the argument, so to speak. But certainly appellant had focused in the briefing on the district court statement's use of the words of the full-blown trial. And the court did use those at certain points. However, in looking at the record, the court had noted that defendant had vigorously disputed the deportation element. And, in fact, further, once we look at the record, the defendant had disputed that he wasn't actually ---- But he's talking about what the defense did at trial. I think the defense vigorously, in its examination of adverse witnesses and its argument to the jury, challenged the deportation removal element. That's all related to what the defendant did at trial. And is there any other basis other than going to trial and how the trial was conducted on which the district court relied in rejecting the acceptance of responsibility reduction? Based on my review of the record, Your Honor, I would agree the district court focused mostly on the conduct of the defendant during trial. However, two points, too. First of all, as this court is well aware, this court gives great deference to the district court in making its finding because, obviously, the district judge is the one who adjudicates the case and sees the parties there day in, day out. And it wasn't more of just the fact that the defendant just simply went to trial. It was the defendant's conduct during the trial in terms of disputing his deportation, recognizing the fact that the court had to handle a sidebar and indicate that the court was considering doing a special instruction about deport orders, how defense counsel had invited the jury. Oh, I see that my time is up. May I conclude briefly? Seeing now the fact how the defendant had relied on an unexecuted warrant of removal and disputing that the defendant was not actually physically deported. Also, the fact that the defendant was arguing about the identification of him out in the field. One other point that I realized I had not indicated in the brief, too, was the fact that the defendant had filed a suppression motion from the very beginning as well. So all of those facts would indicate the fact that the district court correctly ruled that the defendant had not accepted responsibility. So with that, I thank you. Let me first address the modified categorical approach. If you get to the modified categorical approach in this case, I think it's clear. It was trial counsel or state counsel that stipulated that to the probation report. However, if you read further on to the next page, the actual judge takes a factual basis from Mr. Kline. Mr. Ramos. And it is confined to just he entered the residence with the intent to commit marciny. And the judge then goes, do you understand that when you plead guilty, that's admitting that you committed this offense? And this offense that was charged, that the judge just read, was limited solely to an entry. It didn't even say unlawful entry like many before. And in Hernandez-Cruz is a similar situation where they said they stipulated to a police report, but that you still only use that police report to see what the offense committed was. And the offense committed here was just an entry, not an entry without consent. And that's important under Aguilamontes because the fact must be necessary to the conviction. And here, the whole theory of the prosecution against Mr. Ramos was just that he entered, not that he entered unlawfully. That's only an entry. He entered to commit an unlawful act. Mere entry isn't going to be enough. You need probably more than that. Yes. It was entry with the intent to commit marciny. But there was no other theory of how he entered the building. I mean, that's what Aguilamontes seemed to say. The only theory they had about how he entered the building was he took the screen off and came in the window. That element is necessary to prove the offense, and that was the only evidence they had about how he got into the building. But Aguilamontes also focuses on what it necessarily rested on and what was the prosecution's theory. And in this case, and they talk about the important limitations of the modified categorical analysis, and just as the previous example of how, you know, if someone has to defend against a charge, that's what's important. And here, the charge was just an entry. So Mr. Ramos had no incentive to say, well, yeah, I entered, but, you know, the occupant had given me consent before. That was irrelevant from the theory that they were prosecuting. It would have been entirely irrelevant. If he had entered with consent, then he wouldn't have been unlawfully entering. He wouldn't have committed a criminal offense. No, he would commit it just – I mean, that's the point of Aguilamontes. The other part is that an entry is enough if you have the intent to commit larceny. But that's it. You need the second half. Yes. And where does the second half come from except for the fact that his intent was to commit larceny, as revealed by the probation report? But that doesn't mean he had – I mean, yes, that part is in the probation report, that he had the intent to commit theft. But it doesn't matter for this prosecution whether or not he entered without the consent to enter, meaning he could have said yes. I mean, he couldn't have gone – or he would have been able to plead to this offense if he would have said, you know what? I didn't – the owner gave me permission to enter her house, but I entered her house with the intent to steal her jewelry. That would provide no defense. He would have been guilty under the State's theory of prosecution in this case. Could you just very briefly – opposing counsel says you may not be contesting the acceptance of responsibility issue any longer. Are you still contesting that? Yes. I still contest it. And on remand, we can argue for a shorter term than supervised release, so it's not new. Thank you. Thank you. We thank both counsel for the helpful argument. Case just argued is submitted.
judges: Farris, Clifton, Ikuta